UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MICHAEL FUOCO,

        Plaintiff,                    Case No. 2:22-cv-119

v.                                      Honorable Maarten Vermaat

THERESA COREY-SPIKER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.) Plaintiff has also filed a motion to appoint counsel. (ECF No. 2.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendant Vollick for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's claims for First Amendment retaliation and conspiracy against remaining Defendants Corey-Spiker and Batho. Plaintiff's Eighth Amendment claims against Defendants Corey-Spiker and Batho remain in the case. Additionally, the Court will deny Plaintiff's motion to appoint counsel. (ECF No. 2.)

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

events about which he complains occurred at that facility. Plaintiff sues the following Defendants in their individual capacities: Resident Unit Manager Theresa Corey-Spiker, Prison Counselor Michael Vollick, and Assistant Deputy Warden Robert Batho.

Plaintiff alleges that he was in a physical altercation with Inmate Vanzant, resulting in Plaintiff's placement in "the hole."[2] (Compl., ECF No. 1, PageID.4.) A few days later, Plaintiff spoke with the "SCC" (Security Classification Committee), which includes Defendants Batho and Corey-Spiker, regarding the plan for Plaintiff's release from segregation. (*Id.*) Plaintiff told Defendants Batho and Corey-Spiker that his conflict with Inmate Vanzant was "done" from Plaintiff's side, but that Plaintiff feared retaliation from Inmate Vanzant and did not believe that it would be safe for Plaintiff and Inmate Vanzant to be housed in the same place. (*Id.*) Defendant Corey-Spiker told Plaintiff that Plaintiff and Inmate Vanzant would be kept separate and that the two would never be around each other. (*Id.*)

On February 23, 2022, Plaintiff was involved in an argument with Defendant Vollick over Plaintiff's property. (*Id.*, PageID.5.) Defendant Corey-Spiker approached Plaintiff and asked why Plaintiff was being disrespectful to Defendant Vollick. (*Id.*) Plaintiff and Defendant Corey-Spiker were then involved in a verbal exchange that included Defendant Corey-Spiker telling Plaintiff, "I don't give a shit about your property, don't f***ing disrespect my co-worker!" (*Id.*) Plaintiff responded: "F*** your co-workers! F*** ADW Batho, f*** P.C. Vollick, and f*** you too b****!" (*Id.*) Defendant Corey-Spiker replied: "So I'm a b**** huh? . . . Lets [sic] see whos [sic] the b**** when I put you next to the big black guy you just go [sic] into it with!" (*Id.* (ellipses in original).) Plaintiff believed this to be a meritless threat. (*Id.*, PageID.6.) "P.C. Vollick chimed in "Oh thats [sic] a good one" with a laugh." (*Id.*, PageID.5.) Approximately one week later, when

---

[2] The "hole" is a prison slang term often used to describe segregation.

Plaintiff was being released from the segregation, Defendant Corey-Spiker commented, "Lets [sic] see how long it takes before you come back." (*Id.*) Plaintiff also believed that this was a joke. (*Id.*)

In the month leading to Plaintiff's release from segregation, Plaintiff wrote approximately five grievances on unidentified prison staff and officials. (*Id.*, PageID.7.) Plaintiff does not allege that any of the named Defendants were the subject of or made aware of Plaintiff's grievances.

On March 4, 2022, less than an hour after his release from segregation and while in the chow hall, Plaintiff was assaulted by Inmate Vanzant, who had been placed in the same unit as Plaintiff, despite the opportunity to place Plaintiff elsewhere. (*Id.*, PageID.5–7.) During his physical altercation with Inmate Vanzant, Plaintiff was tased by unidentified officers and stabbed by Inmate Vanzant. (*Id.*, PageID.5–6.) Plaintiff presented to medical personnel with multiple lacerations and wounds and "blood drainage from his skull." (ECF No. 1-1, PageID.15.)

On March 7, 2022, Plaintiff again spoke with the Security Classification Committee, including Defendants Batho and Corey-Spiker. (ECF No.1, PageID.7.) Plaintiff asked about their having placed Plaintiff with Inmate Vanzant. (*Id.*) "They" replied, laughing, "You said it was done and over, . . . we wanted to see for our selfs [sic]." (*Id.* (ellipses in original).)

Plaintiff claims that, because of Defendants' actions, Plaintiff suffered life-threatening physical injuries, lingering headaches, dizzy spells, and emotional harm. (*Id.*, PageID.9–10.) Plaintiff seeks a declaratory judgment and compensatory and punitive damages. (*Id.*, PageID.11.)

## II.     Motion to Appoint Counsel

Plaintiff has requested a court-appointed attorney. (ECF No. 2.) Plaintiff asserts that this imprisonment, generally, will limit his ability to litigate. (*Id.*, PageID.26.) He also claims that the issues involved in this matter are complex, and that his limited knowledge of the law and limited access to the law library will hinder his ability to present his case (*Id.*) Plaintiff maintains that a lawyer would be better suited to present evidence and to cross examine witnesses. (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.

Plaintiff's request for appointment of counsel (ECF No. 2) will, therefore, be denied.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liberally construed, the Court finds that Plaintiff seeks to bring claims of First Amendment retaliation, Eighth Amendment failure to protect, and conspiracy against all Defendants.

### A. First Amendment Retaliation

Plaintiff appears to allege that Defendants Corey-Spiker, Vollick, and Batho retaliated against Plaintiff in response to Plaintiff's arguments with Defendants Vollick and Corey-Spiker and Plaintiff's grievances filed in the month prior to Plaintiff's release from segregation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least

7

in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Taking Plaintiff's allegations as true, the Court assumes without deciding that the placement of Inmate Vanzant in close proximity to Plaintiff, knowing that the two can and should be separated to avoid a serious risk of harm, was a sufficiently adverse action for purposes of the second prong. The Court will address the remaining elements in turn.

### 1. Protected Conduct

Plaintiff appears to allege that he engaged in protected conduct on three occasions: (1) in arguing with Defendant Vollick over Plaintiff's property; (2) in arguing with Defendant Corey-Spiker following the argument with Defendant Vollick; and (3) in filing five grievances regarding unidentified staff and officials prior to Plaintiff's release from segregation.

With respect to the first exchange on February 23, 2022, Plaintiff states only that he was in an argument with Defendant Vollick related to Plaintiff's property. (ECF No. 1, PageID.5.) Plaintiff does not describe the nature of Plaintiff's argument with Defendant Vollick or what was said by either participant.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

Here, even taking Plaintiff's allegations as true, Plaintiff simply fails to provide the Court with sufficient facts that would plausibly suggest that Plaintiff was engaged in protected conduct in arguing with Defendant Vollick over Plaintiff's property.[3] Accordingly, Plaintiff cannot meet the first prong of a retaliation claim related to this activity.

Second, Plaintiff suggests that he engaged in First Amendment protected conduct in his February 23, 2022, verbal exchange with Defendant Corey-Spiker, in which Plaintiff responded to Defendant Corey-Spiker, "F*** your co-workers! F*** ADW Batho, f*** P.C. Vollick, and f*** you too b****!" (ECF No. 1, PageID.5.)

While it is true that an inmate has a right to file "non-frivolous" grievances against prison officials, whether written or oral, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one," *Thaddeus-X*, 175 F.3d at 395. MDOC Policy Directive 03.03.105B (eff. July 1, 2018) defines "insolence," a Class II Misconduct, as "[w]ords, actions, or other behavior which is intended to harass, degrade, or cause alarm to an employee." Courts have routinely found that a prisoner's disrespectful language or name-calling, including calling an officer a "foul and corrupt b****," falls within the definition of "insolence" and is, therefore, not protected by the First Amendment. *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *see also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013)

---

[3] Plaintiff alleges that Defendant Corey-Spiker accused Plaintiff of being "disrespectful" to Defendant Vollick during the argument over Plaintiff's property. (ECF No. 1, PageID.5.) To the extent that Plaintiff was indeed disrespectful in a manner that would rise to the level of insolence as defined herein, any claim based upon this argument would independently fail for the same reasons as discussed in reference to Plaintiff's verbal exchange with Defendant Corey-Spiker.

9

(citing cases) (holding that the use of disrespectful language was not protected conduct); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Thus, Plaintiff was also not engaged in protected activity in his February 23, 2022, verbal exchange with Defendant Corey-Spiker.

Lastly, Plaintiff asserts that prior to his release from segregation, Plaintiff wrote approximately five grievances on unidentified prison staff and officials. (ECF No. 1, PageID.7.) As with Plaintiff's argument with Defendant Vollick, Plaintiff provides no details as to the subject of these grievances. However, even assuming without deciding that these were non-frivolous grievances entitled to First Amendment protection, *see Maben*, 887 F.3d at 265, as explained below, Plaintiff's claim nonetheless fails for lack of causation.

### 2. Causation

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "[a]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

With respect to Plaintiff's grievances, Plaintiff states only that he "believe[s] this also contributed to where they placed [Plaintiff]," (*id.*); however, Plaintiff provides no facts whatsoever to substantiate that belief. There are no facts to indicate that any of the named Defendants knew of Plaintiff's grievances filed against unidentified staff and officials, and certainly not facts to indicate that they were motivated to place Plaintiff and Inmate Vanzant in the same unit as a result.

Accordingly, the Court will dismiss Plaintiff's claims for First Amendment retaliation against all Defendants.

### B.  Eighth Amendment Failure to Protect

Plaintiff alleges that Defendants each violated Plaintiff's Eighth Amendment rights in failing to protect Plaintiff from Inmate Vanzant.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment's prohibition of "cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations omitted).

To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

11

### 1. Defendant Corey-Spiker

Plaintiff claims that Defendant Corey-Spiker was the prison's Resident Unit Manager and a member of the Security Classification Committee, responsible for determining, *inter alia*, the placement of prisoners following segregation. (ECF No. 1, PageID.4.) Defendant Corey-Spiker was aware of the potential for harm should Plaintiff be placed with Inmate Vanzant, explaining at the time of Plaintiff's initial segregation that the two "will be separated, and never around each other." (*Id.*) Nonetheless, following the February 23, 2022, verbal altercation between Defendant Corey-Spiker and Plaintiff, Defendant Corey-Spiker said to Plaintiff, "Let[']s see who[']s the b**** when I put you next to the big black guy you just go[t] into it with!" (*Id.*). The Security Classification Committee indeed placed Plaintiff and Inmate Vanzant in the same unit, presumably allowing them to have contact while in the chow hall, and leading to the assault at issue. Following that assault, Defendants Corey-Spiker and Batho acknowledged that they had deliberately placed Plaintiff with Inmate Vanzant. (*Id.*, PageID.7.) Accepting these allegations as true, Plaintiff sufficiently states an Eighth Amendment claim against Defendant Corey-Spiker for failure to protect.

### 2. Defendant Batho

Plaintiff also brings an Eighth Amendment claim against Defendant Batho, alleging that Assistant Deputy Warden Batho failed to ensure that Plaintiff and Inmate Vanzant were kept separate. (*Id.*, PageID.9.)

It is well settled that government officials, including the assistant deputy warden, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*,

12

532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Here, Plaintiff alleges that, like Defendant Corey-Spiker, Defendant Batho, was aware that Plaintiff faced a significant risk of harm should he be allowed contact with Inmate Vanzant, (ECF No. 1, PageID.4), but, as a member of the Security Classification Committee, nonetheless placed Plaintiff in the same unit as Inmate Vanzant, (*id.*, PageID.5–6). Defendant Batho likewise acknowledged that this placement had been intentional. (*Id.*, PageID.7.) Accordingly, Plaintiff's Eighth Amendment claim against Defendant Batho also cannot be dismissed on screening.

### 3. Defendant Vollick

Unlike Defendants Corey-Spiker and Batho, Defendant Vollick is not alleged to have been a member of the Security Classification Committee, responsible for the placement of inmates. Plaintiff instead alleges that Defendant Vollick was aware that Defendant Corey-Spiker had "threatened to place [Plaintiff] by [Inmate Vanzant]" but did "not try to stop it." (*Id.*, PageID.8.) This is insufficient to state a claim against Defendant Vollick.

"Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)). To hold a defendant liable on a theory of failure to intervene, a plaintiff must prove that the defendant knew or had reason to know that the plaintiff's constitutional rights were being violated, and (2) that the defendant had the opportunity and means to prevent the constitutional violation from occurring. *See Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013).

Defendant Vollick is mentioned only in connection with the events of February 23, 2022. Following a verbal exchange, Defendant Vollick heard Defendant Corey-Spiker respond, "So I'm a b**** huh? . . . Lets [sic] see whos [sic] the b**** when I put you next to the big black guy you

13

just go [sic] into it with!" (*Id.* (ellipses in original).) "P.C. Vollick chimed in 'Oh thats [sic] a good one' with a laugh." (*Id.*, PageID.5.) Plaintiff was also under the impression that this was a "meritless threat." (*Id.*) Plaintiff's allegations suggest that Defendant Corey-Spiker's comment was perceived as mere jest. They do not suggest that Defendant Vollick would have been on notice that the Security Classification Committee, of which Defendant Corey-Spiker was a member, would have placed Plaintiff with Inmate Vanzant.

But even if Defendant Vollick had been on notice that Plaintiff would be placed in the same unit as Inmate Vanzant, there are not facts to plausibly suggest that Defendant Vollick had the opportunity and the means to prevent Plaintiff's placement with Inmate Vanzant. While Defendant Vollick may be entitled to "make suggestions" as to inmate placement, (*id.*, PageID.8), there is nothing indicate that Defendant Vollick is entitled to override the decisions of the Security Classification Committee. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Vollick.

### C. Conspiracy

Lastly, Plaintiff claims that all three named Defendants conspired against Plaintiff to violate Plaintiff's constitutional rights. (*Id.*, PageID.9.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing

that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's complaint is completely devoid of facts to plausibly suggest that Defendant Vollick was personally involved in a plan with the objective of violating Plaintiff's Eighth Amendment rights. As discussed above, Defendant Vollick was not a member of the Security Classification Committee. There is no allegation that Defendant Vollick played any direct role in Plaintiff's placement or that he entered into an agreement with any other party for this purpose.

Moreover, as to all Defendants, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same).

Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employments. The "scope of employment" limitation "recognizes

a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. He instead alleges that Defendants Corey-Spiker and Batho—responsible for the placement of inmates—used the authority granted to them *through their employment* to cause Plaintiff harm. This does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment. As a consequence, Plaintiff's conspiracy claim under § 1983 is barred under the intracorporate conspiracy doctrine.

## Conclusion

Plaintiff's motion to appoint counsel (ECF No. 2) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Vollick will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's claims for First Amendment retaliation and conspiracy against remaining Defendants Corey-Spiker and Batho. Plaintiff's Eighth Amendment claims against Defendants Corey-Spiker and Batho remain in the case.

An order consistent with this opinion will be entered.

Dated:   December 1, 2022                             /s/ *Maarten Vermaat*
                                                       Maarten Vermaat
                                                       United States Magistrate Judge